The next case for argument this morning is 13-1117 McConaughey-Corvall v. Edwards v. Edwards. I'm Mark Lewick and I have with me Stacey Overtz and Andrew Henton. Two issues are presented on appeal here, both have to do with priority statutes. The first is 35 U.S.C. section 120 and the issue there is broadly stated, did applications 6 and 8 comply with the specific reference requirement of section 120? Let me put that to you as a threshold, a housekeeping question, which is do we need to reach, if we were to agree hypothetically with the district court on 120, do we reach the 119 issue at all? You don't need to reach that to decide this case because we do have to show that we complied with section 120 in order to reach the section 119 issue. On the other hand, I think the section 119 issue is confused by the district court's decision and I think that creates problems for practitioners. What about the reverse question? If we agreed with the district court about 119, do we need to address 120? In that case, no you don't, if you agree with the district court on section 119, then we're claiming priority all the way back to the original French 1B or 1A application and that's what we need to get behind the prior one. So you lose if we hold against you on either 120 or 119? That's correct. You've got to win them both. Yes, yes we do. So why don't you go ahead and... I'll start with section 120 and where, first of all, let me simply say I think these are very little decisional law from the circuit on either one of these points and in both instances, I think the district court got it wrong. There wasn't an awful lot of analysis on the section 120 piece in the district court's order and let me start with, you know, where does the 120 dispute center? Its center really comes down, in my mind, to application eight because in application six, it was basically the same language but the patent office got it right on the face page of the patent and where I'd like to take the court first is to application eight, which is in the appendix at A622. May I ask a question? I think you agreed with this, I think it's page 26 of your brief. You agree that the 120 requirement is that each application refer to everything in the chain below and not just to the immediate predecessor? I agree with that and I believe that the specification in application eight does exactly that and indeed I think it does pulling through the entire chain but if we look at application eight under the cross reference to related applications at A622, really the question comes down, if we just skip down to the last three lines of the statement where it is, this application is also a continuation part. Simply stated, the question that's raised here is does that refer to application four, the 634 application, or does it refer up to the top sentence, the present application? And I would submit to the court that if we apply the court's approach and claim construction of looking for the antecedent basis, the proper reading of this application is also, refers back to in the third line, the 634 application, application four, which is indisputably filed within the 30 month period of the PCT application. And so even though there's a lengthy clause in there between the 634 and this application is also, that clause refers to a single U.S. patent and its specific priority data. And what the court did is to skip over the 634 and read this application as also as modifying the present application. And I think that's wrong as a matter of grammar. And it's consistent if you want to go back to application four, which indisputably properly claims priority to the 258 PCT application. And it's in the appendix at A904. If we look at the syntax that's used in the cross-reference to related applications there, the antecedent basis approach holds true because there, this application is also, modifies the present application, which in that case is application four. And so all that was done here... So your view is the phrase this application changes its meaning from application to application. No, actually my view is that what changed was the reference present application to be the 634 application in the later cross-references. This application always referred to the 634. And what simply happened is that as new applications came up in the priority chain, the new information from the immediately preceding case was added. And this application was made to refer to the 634. Just to show you how technically we can get, would it matter if there was, instead of a semicolon, a period before the phrase this application? I think that would make it less clear. And I would acknowledge that. But here's what I'm going to say about it, Your Honor. You know, this is an important invention. And if the question is going to turn on the semicolon versus a comma versus a period, there is another way of resolving this question with absolute clarity for practitioners. And that is, and was actually done in the real world here. And that is, the only applications, well, let me back up, to meet the co-pendency requirement of 120, only applications that are filed within 30 months of the original French application can claim priority to the PCT application. There is only one application in this chain that can do that. And that's application 4. And if the court were to look at all of the circumstances here, what you have is, you know, a skilled practitioner, even put it this way, I would presume that your reasonable person from the case law is someone who is presumed to know the law of priority, complicated though it is. That person would understand right away that application 4 is what's referred to if your question is, you know, is it the semicolon or what if it's a period. And this mirrors exactly what happened in the real world. The PTO got it right in application 6. And if you look at the face page of the patent, they understood it exactly as we've articulated it. Three sets of lawyers before the litigation got rolling understood it exactly that way on behalf of Edwards. One, when they filed their inter-parties re-exam, pointed out that application, the chain tracked back up to the PCT application. Their opinion of counsel, which they intended their executives to rely on. Can I ask you something? This, I guess, reminded me a little bit of a piece of our case law that arises, I guess, in the indefinite context, indefiniteness context, where there's something garbled and senseless in a claim. Maybe this is a question more for the other side, but I'd like to hear from you about it. We have language in a claim that makes no sense. And we have law that says, if there's real doubt about how to fix it, we won't. But if there isn't, we will. Is that a standard that applies here? And if it applied here, would you meet it? Well, first of all, at some point they intersect without question. I don't think in this case it's necessary to go that far. The court can apply its test from the DuPont case, the reasonable person. And here, in our view, there's nothing to be fixed. At most, it's debatable, at most. And I believe a straightforward application of your approach in claim language resolves that issue in our favor. And so if you step back and you ask yourself the question, you know, what should we consider in the reasonable person test? I would say, first of all, certainly you should consider how the application of the rules themselves would resolve the question. That's our argument that it can only be application four. Secondly, you should consider, though you're not bound by, how the patent office understood it. And it's not just application six. It's also application ten, where the priority was set forth in detail in the file history. And then thirdly, I think it's entirely fair to look at how actual reasonable persons, with the incentive to figure it out, did so in the real world. But that really leads us down a wonderfully slippery slope, doesn't it? Because it's true that our precedent in the indefiniteness area says unless it's insolubly indefinite, i.e. unfixable, we'll fix it. Now, to fix this, there are two plain meaning interpretations, aren't there? One of them, plain meaning is, it refers to this application, the current application. Another plain meaning is, it refers to the immediately preceding described application in that long paragraph. You come up with a third reading which requires us to read it in the context of each of these priority claims. Do I understand you correctly? I'm saying you, in the context I'm reading it, you can find everything in the specification of application A. The other specifications confirm that reading. But you want it contextually? Yes, I do. Contextually within that, and I realize the question raises, but if you go back to your discussion. Doesn't that put a burden on the reasonable competitor who's trying to figure out exactly what it is you're claiming to try to guess what the contextual reading might be? To some degree, there is a burden from the perspective that some level of analysis is appropriate to determine priority. But at least in the context of the 120, doesn't the statute explicitly indicate that Congress said you've got to lay it out? We don't want to leave the burden on whatever, whether it's the reasonable person, person skilled in the art. We want you to lay it out explicitly. Isn't that clear from the statutory language? That is correct. And so the question comes down to here in this particular situation, did they lay it out? And in the real world, there are at least as many ways to describe these priority chains as there are practitioners. And so my point to the court is you only have to go so far in this case, and I understand the concern that you're raising. But if you look at your prior decisions, by far the bulk of them deal with situations where there's no reference to the preceding application or one of the applications in the chain. And certainly it's clear that that doesn't meet Section 120. But Section 120 applies to the entire act. It impacts, you know, all of the statutes. That's made clear in your prior decisions. And if you articulate a rule where you're going to look at it and it's going to come down to a semicolon, a comma, or a period without allowing yourself any other facts to inform, I think you're going to see an awful lot of litigation over the question of priority because there will be a great incentive, as there was here, to litigate not the actual merits but to come after a year after people actually analyzed the priority claims and then come back with a completely new argument on it. And I think in this particular case, there's a wealth of evidence, both intrinsic. I've given the court a way I think that is the proper reading, syntactically, of the specification. But if you just step back, think about the Samson case. We don't want people to have to search the records of the Patent Office. You don't have to search here. All you have to do is look at the other applications, every one of which is specifically identified in the specification. There's no dispute about that. So, to me, it comes down to a question of how are you going to read the priority information. Yeah, but if you're looking for certainty and uniformity in the patent system, your way has its shortcomings as well, right? I mean, if you have a clear rule and it says you have to explicitly state it, then at least people know what the rules are. In your case, you have to do a further analysis. What would one of skill and they are? How would he have read this? What would he have understood? And it makes the system much more uncertain and complicated, does it not? In the abstract, it could. But what I'm saying here is that the practitioner here thought he was being clear, and I think was being clear. But let me just address what you have to do to analyze it. It is no more complicated than looking at 37 CFR 1.495, taking the 30 months from the French application. That ends April 30 of 2003. Application 6 was 2006. Application 8 was 2008. Only application 4 was filed within that time. And I don't think that puts much, if any, burden on a practitioner to look at. Do you want to – your time is up, but I don't know if you want to spend at least a couple minutes on Section 119. I would. Thank you, Your Honor. Don't you run into exactly the same problem with 119? Because 119 does not parallel 120 with that language, does it? No, it does not. So I'm going to set the 120 argument off to the side at the moment. Assuming you won the 120 argument, then what? Well, 119, the district court observed in its order that Section 119 on its face does not require all intermediate applications in a priority chain to contain a specific reference to the earlier filed applications. And that's where the court should have stopped, because what the court did was then go on to read into Section 119 exactly a limitation that said it had to be set forth in each intermediate application. And that suggests that practitioners have not operated under that rule. And if we look at the MPEP at Section 401.14, it says it is appropriate to do exactly what the applicant did here, namely raise the foreign priority application for the first time in the application in which you're claiming it. That's Application 10 here. And as long as you meet the timing requirements of the commissioner, which was done under Section 1.55, that's all that's required. And where the district court went off the rails is it looked at the comment to the proposed rule change. And if I could just – I don't want to belabor the court, because I know I'm already over my time. But if we look at the reference to – I'll just describe it. I don't want to – if you look at the proposed comment to Rule 1.55, what was done was that they wanted to, quote, make clear that the Tanger decision was limited to filing the certified copy. In fact, that rule was never adopted. So the court ended up relying on someone else's interpretation, not adopted in the CFR, and contravened by the MPEP in 201.14. And just at the end, the final analysis on 119, to read that additional requirement into it conflicts with rules of statutory construction. If you want 119 to be read with no reference requirement, is that right? Only the reference requirement that in the specific application that you are claiming foreign priority, that you make the claim there. And what Section 1.55 allows you to do is either make that claim within 16 months of the original French application, or within four months of the filing of the specific application. And that's exactly what was done here. What do you do with the little passage in MPEP, what is it, 1895.01? I'm sure that says that claim for foreign priority under 119 must be made in the particular application in order to take the benefit of the filing date of the prior filing. This is true regardless of whether such a claim was made in the parent international application. Doesn't that, naturally read, mean that application 4 had to make the reference to 1B? No. Even if 6 and 8 didn't before you got up to 10? No, I don't believe it does, Judge Perando. I think if you look at 201.14, it's very explicit on the point. And it's at the appendix 1381. And it addresses exactly the situation. I'm looking at the third paragraph down. Where a claim for priority under 35 U.S.C. 119B has not been made in the parent application, the claim may be made in a continuing application, provided the parent has been filed within 12 months from the date of the earliest foreign filing. So if we just apply that here, the parent that would be referred to here would be the PCT258. And under Section 120, application 10 would be entitled to the filing date of that PCT application. It's the effective filing date. And so it's made within 12 months of the French application. And the word A in the center of that paragraph to me is instructive. That it's without limitation. You can make it at any continuing application. Except that the 2B, the international, is not, in fact, the parent of 10. It's the parent only of 4. Well, that's correct. Right. So the next sentence says that 4 had better comply with the filing requirement of 1.55. Well, I read it as any of the continuing applications, Your Honor. And I think that is a common sense reading from this perspective. You know, you don't know when you filed an application in which you are claiming priority to the PCT but not to the French that you will ever be claiming priority to it. And so if you just think through this chain and you go down all the way to 10, that is the first time that the applicant here tried to claim back to the French application. They specifically referenced the figures and the spec in the PCT. They did the same in the French application. The patent office understood it that way. And this may be confusing, but in a parallel way, had this application entered the national stage instead of it having been set up the way it was and it came in within the 30 months and the applicant filed the PCT application in the United States, you wouldn't have had to make any reference. You wouldn't have even had to comply with Section 120. And that's because the PCT application itself claims priority to the French on the priority line? Exactly correct, and it's Fiscourt's decision in Broadcast Innovations. So, you know, I think what happened here, if we look at the facts and circumstances, you're seeing how practitioners understand the application of these rules. And I acknowledge your reading of 201.14, but if we couple this, we go on with what's in here. In the Tangsrud case, I admit it's a little bit of a tangled decision, but in my reading of Tangsrud, there's only one way of reading it, and that is that you can file both the claim for priority and the certified copy in a subsequent application. And I believe that's the way the practicing patent bar understands it and applies it. With that, I... I appreciate that. Well, we store two minutes of rebuttal, which brings us to having used an additional 10 minutes. So we'll put that, Mr. Greenwich, at a time only if you need it. I would prefer not to use it at all, Your Honor. Thank you, and may it please the Court. So I would like to start with the Section 120 issues and then after that turn to 119. What I would say here is if we step back and look at what happened, it is really very clear that there are two lines of priority. There's an A line, as we diagram it now briefly, and a B line. And in accordance with the rules, the priority claim is set out in the first sentence of the specification. And what happened, clearly, is that the applicant's attorneys, when they were going through filing each successive application, updated the priority claim for the A line and failed to update it for the B line. Fair enough, but, you know, I love rules. Every parent loves rules and wants to live according to rules. But in this instance, if your friend is correct that one skilled in the art, that one familiar with this, didn't take much of a leap for them to figure out what was going on here, why shouldn't that be the rule we apply? Several reasons. First of all, that it is very important that there be a bright-line rule and that the decisional law around this, although it's not plentiful, certainly reinforces that. Well, what a reasonable person familiar with patent law and this kind of issue would interpret as a bright-line rule. I disagree with that, Your Honor, because I would say that, in fact, the circumstances of this very case highlight the problem. Now, I'll come back to the so-called reasonable person test because I don't believe that any such test exists. But if we look at the priority claim, and specifically if we look, for example, at the very page that Mr. Lillick highlighted, which is A622, his argument, if I understand it, is that, well, application 6 couldn't be a continuation in part of application 2B because it wasn't filed within 30 months, and therefore this putative, reasonable, or skilled person would know that it must be application 4 that they were talking about. But, in fact, he is completely silent on this. We also have in here application 3, which was filed in November 26th of 2002, and that could be something that was intended here. Or, alternatively, the skilled person could look at this and say, well, I don't know what these people intended. It appears that probably a mistake was made, but I don't know what the mistake is. I don't know which one of these applications they're intending to refer to. Or perhaps they just, in the word processing, a chunk of text got omitted here and there's something else altogether that's missing. And the only way the reasonable person could answer that would be to go to the office, these days electronically, and pull down all of these records and start passing through them and then say, I've looked at all of this. My best guess is that probably what they intend to claim is this series of priority applications, and now I can work on that basis. Now, that is precisely what the decisional law tells us that this rule is intended to avoid. It is not unreasonable to put the burden on the party that is in charge of making this record, the burden of making sure the record is correct. And also, one of your Honours asked whether there's a burden on competitors. I think it was allegedly claimed. Absolutely there's that burden on competitors, but we shouldn't overlook the burden on the office as well, at the point that I would come back to in the context of 119, where we're talking about searching, we're talking about what we carry forward, what we look at. The office has made very clear in MPEP 201.14d, it considers accurate recitations of these priority chains to be essential precisely so that it can do its job. Can you go over something that I think you said, but it seems very important to me. Explain the plausible alternative interpretations of the closet issue. What could it plausibly or reasonably have a place in? I think you'll agree, Your Honour, that I guess I would agree mostly with Judge Plague that there are two primary interpretations. The first one, I don't think they're co-equal. I think given the practice in this area, when people see this application, they take it to be synonymous with the present application. I didn't mean a word-based one. Somebody reading this, which of the prior applications listed, and I'm looking at application number 8, same question for 6, but 8 seems a good one to focus on. Which ones? Could it be? Well, I think it could be 3, it could be 4, and as I pass through, my copy doesn't have the numbers on it, but I think in 8 it could be 6. And the answer with respect to the last point is, well, that's wrong, because it wouldn't have been filed within 30 months, but that to me just brings us back to the question of, well, clearly a mistake has been made here, but as a reader, a disinterested reader, I can't tell what mistake it is, and I could only answer that by doing an investigation, and that's precisely what I'm not supposed to have to do. Either way, with respect to the semicolon, I certainly wouldn't be the one to suggest that, as a general proposition, we should be investing semicolons with vast significance, but the rule is clear here. You know, the Patent Office Rule 78A13, right, that says there's only two. The Statute 120 says you have to have the priority claim in the application. Not in a patent, but issues from the application. So it's not okay if it's in the patent that issues from applications. It has to be in the application. And the regulations, the Patent Office Rules, say there's only two places it can be. It can either be in the first sentence of the specification, or it can be in something called an application data sheet. But those are the only two possibilities. And because they're all the same first sentence, practitioners commonly write these things as one single run-on sentence, and I would suggest that that's why it's a semicolon. Because the rules tell you put it all in one single sentence. And that's what I think is going on. And I think, you know, a fair... When you look at this, the problem is that they made a mistake. If they didn't... And I would go on and say, and I think this goes to the indefinite at this point, there are mechanisms to fix those mistakes. And the problem that we face in this case... Fred, just to make sure that you understand what I'm getting at, I'm not talking about the general insolubly ambiguous. I'm talking about the particular class of cases, including CBT-Flint partners, that says sometimes we get self-evidently garbled claim language. And sometimes we fix it, and sometimes we don't. And the standard that separates those two alternatives is it beyond reasonable debate what the correct fix is. And I guess that's not as open-ended a standard as how would a reasonable person read it. That's more cabin. And so the question... One question is, and this is why I asked you again, about what these phrases could, within reasonable debate, actually apply to. I take that as an excellent question, Your Honour, and I think the answer is they could apply to more than one thing. But also, we shouldn't overlook the fact that the type of mistake that could have been made is simply to omit text that should have been there and wasn't. And so in the word processing of this, somebody could, in the updating, because these things always get updated when you file a successive application, somebody in cutting and pasting could have inadvertently or failed to hit the key and put in a block of text that was supposed to be there. And therefore, out in the real world, if I'm looking at this, I think the question in my mind is not just which of the things that are there could it be, but in fact is what this applicant is driving at, trying to refer to something that just isn't there. And if we're going... The one thing I would agree with Mr Leucon is it is very important that whatever this court does be usable for both practitioners and the office. And if we look at the real world, how would someone interpret a garbled priority claim like this? I submit that one of the things they would think is there's something important missing here, particularly in a circumstance where, as Mr Leucon says, well, it seems to be referring back to something that is out of time. So I would say we've got 3, 4, and 6 that are candidates plus possibly something that should have been there and wasn't. And that means that that highlights that there is no necessary and simple fix. Now, what I would look at here is, say, the rules of the patent office and statute, indeed, provide a resolution for this. They say you could go in and it could be done maybe through a certificate of correction, maybe through a reissue. There are ways to fix it. The reason that we're standing here in front of your Honours is that the applicant, the patent owner here, didn't wish to avail itself of those means. It wished instead to argue that no mistake had ever been made. And Medtronic's argument is not, gee, we made a mistake, it should be fixed. Even as recently as 10 minutes ago, Mr Leucon said it here. I don't read it like that. I don't think it's even wrong. Can I ask you a question? I asked Mr Leucon, and I think he agreed that this was his position and his brief acknowledged it. And it's this question, what the source of law is for the proposition that to comply with 120, an application needs to refer not just to its immediate predecessor, but to everything preceding in the chain. And I know that there's a kind of reference to that in Encyclopædia Britannica, but that didn't actually involve the question because the immediate predecessor was in fact the progenitor application, so there was no difference. So where does this come from? That's a very good question, and I'm not sure that I know the answer. I think I would have to go back and think about not one that frankly we had looked at in the context of this case. I think there is in fact material in the NPEP that says that, but we've, at least in a vacated decision of ours, pretty strongly said 120 sets the rules here, and the PTO doesn't change what's in 120, and I'm not sure I can quite take that out of context. I think there is a case, and it's not Encyclopædia Britannica, that says that there has to be a complete chain, and I don't think anyone would disagree with that. But I would think here that everyone has operated under the assumption since the 1952 Act that the office has operated under the assumption that it has to include, that each one has to be updated to it so that each one is freestanding and includes everyone in the chain. Because when we look at the policy reasons behind this, the whole purpose is to have a single place to go to, and be able to say, this is what I need to look at. And so my immediate reaction would be that, I don't have a set of expectations, but that's how people have used it. In terms of the language of the statute and whether that necessarily implies this, I don't know. I think for purposes of this case, I think both parties have simply taken it for granted that that was so. Well, unless you read it that way, the reference to a specific reference to the earlier filed application itself becomes a dilemma because you don't know which earlier application you should single out. So the logic would argue, I suppose, for saying that means... I would agree with that, particularly as the priority chains become convoluted. But here, 10 refers to 8 and 8 refers to 6 and 6 refers to 4. If there's a problem here, it's that you start with an assumption that you have to go back to 2B and connect it up. No, but I think that the problem is other. I think the problem is that the specific relationship in 120 is construed to refer not just to the number of the application but also to the relationship. And that's what has to be spelled out. And the statement that is made, statements that are made in 6 and 8 about the relationship, wrong. That's the problem. So this isn't about whether I've got the numbers in there. It's about the fact that the relationship, is it a continuation, a continuation of other, or is it wrong? And that's the flaw that causes it to be non-compliant with the law. And I think that's true regardless of how we answer the question of whether each one is required to refer to the full chain or just to its predecessor. I would, I'm not sure how I'm doing on time except that I'm sure I've gone over. No, you've got some time remaining because you remember to generously extend your time. Thank you, Your Honor. I would just, on the reasonable person test, I would say that this is not a test, that the issue in the DuPont case was one of whether magic words of specifically claimed priority had to be used. The lawyers, in that case, the relevant language was this is a non-provisional serial number X or provisional serial number Y and it didn't say it claims priority from provisional serial number Y. That was the sole issue. I think everyone is clear that that does spell out the relationship and in fact, MPB 201.11 specifically says under those circumstances you don't need to spell out the relationship because saying something is a non-provisional of a provisional is the relationship. And therefore, in DuPont, we weren't looking at, the court, Your Honor, was not looking at this issue and what Medtronic has done is light on a passing sentence here and now tried to inflate that into a supposed test. When a court prescribes a test, it does so having weighed what the alternatives could be and formulating a test just as, to pick an example at random, the machine or transformation test. It doesn't create a test in a single sentence without any discussion on the merits and so all of this argument about a reasonable person test is really just another effort to find something to latch onto to dig out. With that, I would turn to section 119 unless there are further questions on 120. No. 119 is problematic, is it not, with respect to just the statutory construction. I mean, the other side needs to win on 120 and 119 so it doesn't help them too much to play with this. But it seems troubling. I mean, you have to infer that the requirements of 120, Congress also intended to rely on those in connection with 119. Is that your argument? I think our argument is that we have to infer that the provisions of 120 don't fold into 119. And that when 119 talks about an application, it doesn't contemplate an application that is relying on the benefit of something earlier under 120. And the reason I would say that, I mean, the first thing I would point to is that there are a whole lot of waiver provisions over and over again in the statute in 119b2 and in the regulations, Patent Office Rule 135C, are saying if you miss the deadline for claiming priority, we will allow you to do that out of time providing you go through and file a petition and show that the delay was inadvertent. Medtronic's construction would gut that and would just be an end run around that because under their interpretation, what you can do, simply file a new continuation and then within four months of filing that make a never-before-presented priority claim. So why would you ever want to go back and say, excuse me, I need to file a petition for doing this out of time? I would suggest that can't possibly be the interpretation that Congress had in mind when it enacted these two provisions. And I would say that the, I think you're under, I infer what you're thinking of is the so-called Roussello presumption where if language is in one clause of the statute and it's not in another, we infer that that was done purposefully, certainly that is the law, but as we say in our brief, the greater the difference in underlying language, the weaker that presumption will become. And here, if we look at the provenance of 119 and 120, we see that they have entirely different histories. 119 goes back to the Paris Convention of, I want to say, 1883, but there have been, this element has existed in the law of the United States since the 19th century. It evolved, and when the drafters of the 52 Act sat down to create the 52 Act, for 119, they lifted a part of it from its predecessor, Revised Statutes 4887, and so it has a history that we can't just disregard in this, whereas 120 was a new quinnage in the 52 Act. It codified judge-made law that had established continuation practice. The difficulty there is a very large hurdle, which it seems to me is that if Congress knew how to write what they intended for 120 to read the way you want it to read, and they lifted 119, they knew how to write requirements, but they didn't, when they lifted 119, make any change in 119. They did, Your Honor. The part that in fact concerns us most here, which is the part that says you have to make a formal claim for priority, and also file a certified copy of the foreign priority document, was a new addition in 1952, and that, to be Judge Rich and P.J. Federico and third person that I can never remember, that was something that they came up with, but I would suggest that what they're looking at are very different scenarios here, where their idea is, and clearly all of these time limits about doing this within 12 months and presenting a claim for priority within a further specified period, which the Director has said is 16 months. The idea is you will do that as a one-time event at the beginning of the prosecution, and then we will move into a different landscape, which is that of continuation practice. So I'm sorry. That's I guess kind of the way I was understanding it. It's not really the right phrasing, as the district court said, that 119 itself requires everything in the chain to include the reference to 1B. It is rather that here, the first U.S. application, the landing one at four, had to, and after four, we don't need to talk about 119 anymore. 120 needs to carry on. That's how I would look at it, Your Honor, although I would say that, again, typically the way people would do that when they replicate and augment that priority claim, with it would come the original 119 reference, so it would be carried forward in each successive one. Right, but the rules are in existence to take care of situations where people mess up. Perfectly fair, Your Honor, but I would agree with exactly what Your Honor said to Mr. Lewick about MPB 1895.01, which I think addresses this specifically. What that says is when you go from the parent international application to the national, to your filing now and application thing, you must put in a new claim of priority at that stage to your foreign application, to, in this case, 1B, right, and that was not done, and the reason here is that, with all due respect to my learned adversary, it is not the norm in this business to turn up 10 years after the fact and say I think I'll make a new foreign priority claim. People do it at the beginning. The rules contemplate them doing it at the beginning and they require it to be done at the beginning, so that, I mean, if we think about the practical effects of this, if I can come on 10 years later after a long string of applications and say, hello, Patent Office, I'm now going back a year earlier, all of your searching has to be redone, that can't be what this regime is intended to accomplish. Here, creative lawyers decided that it would be good to make a priority claim to an application that they had desisted from relying on, but that can't be the way the statutory regime is intended for all of these reasons, and just with respect to MPE, the last point I would make with respect to MPE B201.14, Your Honour, I would read it exactly as Your Honour apparently did, to say that that next sentence talks specifically about the immediate foreign priority application and it isn't just a blanket authorization that you can bring in new priority claims anywhere down the road in the 120 string of continuations. As you conclude, let me just ask you to conclude with where your friend began, which was we kind of gave past his view on what we need to decide here and what we should decide with respect to the 120 and the 119, and just give you a minute to tell us if you have any views on that. I don't disagree with what Mr. Lewick said on that. Certainly it is clear that if the court finds in Edward's favour on 120, it does not need to reach the 119 issue. I take some comfort in what Mr. Lewick said, that he thinks they need both of them. I'm not sure that that's... I'm sure you wouldn't disagree with that. If he said it, it's okay with me. Well, to start, I would simply point out if it wasn't a concession on 120 and 119, we do have to comply with both of them. We realize that and we believe we meet our burden on both. And I'd like to start on the 119 issue first and just go back to Judge Toronto's question on 1895.01 and simply posit here that the parent application of application 10 in this particular chain is the US application, application 4, because Medtronic didn't enter the national stage with the PCT application. And so, even under Your Honour's reading of 1895.01, I would submit that application 10 complies with that and it was specifically brought to the Patent Office's attention in the appendix at A592 in explicit detail and the Patent Office is presumed to do its job. They didn't see any issue with it. I'm not going to belabor the 119 argument. I think the statutory construction issue is clear. In this court's decision in Add Global Funds, pointed out exactly what you said, Judge Plager, that where Congress has two differing statutes within the same act, it is presumed that Congress acted intentionally. It also says in that case that where the language of the statute is unambiguous, that's the end of the inquiry. And here, the District Court acknowledged in its order at Appendix 119 exactly that. It doesn't require it on its face. And without going into the parade of horribles, clearly that's not the rubric that this practitioner was operating under. And I think the court would have to have in mind making this interpretation, whether in fact that's the rubric other practitioners are operating under when 119 doesn't require it and MPEP 201.14 says that's the way you can do it. You are aware that we're constantly being invaded to apply policy. And policy would make a lot more sense if the statute, if 119 had the same requirement as 120 within those limits we were talking about previously. Don't you think we have an obligation to do that? Well, I do think you have an obligation to consider the policy behind it, but I think the policies are different. If you look at your decision in Laughlin where you interpret 120, and I'll just go to the quote at 1293, provided the criteria of Section 120 are met, the application shall without exception receive the benefit of the earlier filing date. The statute does not limit its effect to only certain provisions under the patent law. So 120 sets forth the reference back up the chain. 119 pertains to those situations where an applicant decides they want to claim back to that foreign priority date here, French 1B. That wasn't the case in 4. It wasn't the case in 6. It wasn't the case in 8. It didn't become the case until 10. And one could equally look at the policy behind them and say we're not going to burden practitioners with making all of that priority reference when they're not actually claiming that priority. So this may... I hate to go over, but this may beg the question of then, you know, why should you get the benefit of that date to begin with if you don't claim it intermediately? And that goes back to, you know, having the benefit of the PCT application date as the effective filing date. So that's why I hope the statutory scheme actually does hold together from that perspective. I'd just like to make a couple of points on 120. And, you know, first, looking at 8, at the specification for 8... Yes, so what in particular is off about the suggestion that a skilled reader might well think that this application refers to number 3? Well, that's exactly what I was going to address. Because if you look at... if we just follow track through on this line, application 634 filed April 10, 2003, now patent 406, which is a continuation in part of U.S. application 355, that is... that's application 3 right there. Okay, and so if we take this, which is A, that's clearly modifying 634. Now we get to the semicolon. This application is also a continuation of international application PCT 258. Anyone who looked it up would see that the 355 is actually a continuation of 2A, not 2B. So I don't see how there could be confusion about that. That goes back directly to the 2B line. But the dates work out on that one. Yes. Case 3 was filed both after 2B and within 30 months. Sure. But one can easily see that 355 is not a continuation of the 258. From the kind of grammatical structure here. Yes, and from looking at the application. Okay, we're going to limit you to one final point. All right. Well, that's fair, Your Honor. The final point I'm going to make is to address your burden question. Doesn't it put a burden on a competitor? I would suggest it puts an incredible burden on practitioners to not only do what is reasonable, but to ensure that there could never be a second interpretation of a priority reference, no matter how strained. And when you look at a situation like this where we have an incredibly valuable life-saving technology where the defendant has every incentive to pour hours and hours and armies of lawyers at it, I think it creates a problem to not apply your reasonable person test from the DuPont case here. And I'll say no more. We thank both counsel. The case is submitted.